**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WASHINGTON MUTUAL, INC., et al., | ) | Case No. 08-12229 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| | ) | |
| WASHINGTON MUTUAL, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 12-50422 (MFW) |
| | ) | |
| XL SPECIALTY INSURANCE COMPANY, et al.,[1] | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**[2]

Before the Court is the Defendants' Motion to Dismiss the Complaint filed by the WMI Liquidating Trust (the "Trust"), as successor in interest to Washington Mutual, Inc. (the "WMI"). For the reasons set forth below, the Court will grant the Motion.

---

[1] The Defendants include XL Specialty Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, Columbia Casualty Company, Axis Insurance Company, ACE American Insurance Company, Arch Insurance Company, RSUI Indemnity Company, Chartis Property Casualty Company, formerly known as "AIG Casualty Company," London, Subscribing to Policy No. B0509QA027908, also known as "Lloyd's Underwriter Syndicate No. 2488 AGM London," Allied World Assurance Company Ltd., and Scottsdale Indemnity Company. Because Allied World Assurance Company Ltd. was not served, it did not participate in the submission of the Motion to Dismiss.

[2] The Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052(a)(3) of the Federal Rules of Bankruptcy Procedure.

I.   BACKGROUND

WMI is a bank holding company that formerly owned Washington Mutual Bank ("WMB").  In early 2008, WMI purchased from the Defendants $250 million of coverage under twelve insurance policies (the "2008-09 Policies") to provide coverage to WMI and its directors and officers for claims made from May 1, 2008, to May 1, 2009.

As a result of a downgrade in WMI's and WMB's credit ratings and the global credit crisis, a bank run ensued resulting in more than $16 billion in deposits being withdrawn from WMB in a ten-day period beginning on September 15, 2008.  On September 25, 2008, the Office of Thrift Supervision (the "OTS") seized WMB and appointed the Federal Deposit Insurance Corporation (the "FDIC") as receiver.  On the same day, the FDIC sold substantially all of WMB's assets to JPMorgan Chase ("JPMC").

On September 26, 2008, WMI and WMI Investment Corp. (collectively, the "Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code.  After the commencement of the case, the Official Committee of Unsecured Creditors (the "Committee") investigated a downstream capital contribution of $500 million made by WMI to WMB shortly before the seizure of WMB by the OTS (the "September 2008 Downstream").  On October 13, 2011, WMI and the Committee sent a demand letter to the directors and officers of WMI (collectively, the "D&Os"), asserting claims

related to the September 2008 Downstream.  (Adv. D.I. 25 at Ex. L.)[3]  In response to the demand letter, several of the D&Os and WMI sought coverage for the asserted claim under the 2008-09 Policies.  On December 22, 2011, XL Speciality denied coverage.  (Adv. D.I. 35 at Ex. 3.)

In its Seventh Amended Plan of Reorganization (the "Plan"), WMI agreed to establish a contingent reserve of $65 million for the D&Os.  (D.I. 9178.)  Of the $65 million reserved for the D&O claims, $55 million was set aside for defense costs associated with the September 2008 Downstream claims.  The Plan was confirmed on February 24, 2012.  (D.I. 9759.)

On March 15, 2012, the Trust filed a Complaint against the issuers of the 2008-09 Policies (the "Defendants") for (1) breach of contract, (2) tortious breach of the duty of good faith and fair dealing, (3) a declaratory judgment that the Defendants are not subrogated to the indemnity claims of the D&Os, and (4) equitable subordination of any subrogated claims the Defendants may have.

On May 7, 2012, the Defendants filed a Motion to Dismiss the Trust's Complaint on several grounds.  First, the Defendants argue that with respect to the breach of contract and breach of fiduciary duties counts, the Complaint fails to state a claim

---

[3] Citations to pleadings in the bankruptcy case are "D.I. #" and to pleadings in the adversary proceeding are "Adv. D.I. #."

over which this Court has subject matter jurisdiction or upon which relief can be granted. In addition, the Defendants argue that there is no "case or controversy" between WMI and the Defendants on any of the counts.

II. JURISDICTION

This Court has jurisdiction to determine whether it has subject matter jurisdiction over this adversary proceeding. BWI Liquidating Corp. v. City of Rialto (In re BWI Liquidating Corp.), 437 B.R. 160, 163 (Bankr. D. Del. 2010) (citing Chicot Cnty. Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 376-77 (1940) (holding that a federal court has authority to determine whether it has subject matter jurisdiction over a dispute)).

III. DISCUSSION

    A.    Breach of Contract and of Fiduciary Duty

The Defendants seek dismissal of the breach of contract and breach of fiduciary duty counts for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(1); Fed. R. Bank. P. 7012.

A bankruptcy court may exercise jurisdiction over four categories of matters: "(1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under

title 11, and (4) proceedings related to a case under title 11." *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3d Cir. 1991).

In this case, the Trust concedes that the only category under which the Trust's claims may fall is "related to" jurisdiction.[4] (Adv. D.I. 50 at 12.) The majority of bankruptcy courts to address this issue agree. *See, e.g., Allied Prod. Corp. v. Hartford Accident & Indem. Co.*, 02 C 8436, 2003 WL 503805, at *2 (N.D. Ill. Feb. 24, 2003) (withdrawing the reference in an adversary proceeding for determination of insurance coverage, stating that "[t]he court fails to see how the insurance dispute at the heart of the adversary proceeding arises under or is in any way related to the Bankruptcy Code"); *In re Ramex Int'l, Inc.*, 91 B.R. 313, 315 (E.D. Pa. 1988)

---

[4] The Bankruptcy Court may not enter a final order in a "related to" matter and instead is required to "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1). The Court may, however, hear and enter interlocutory orders, such as on motions to dismiss. *See, e.g., In re Trinsum Grp., Inc.*, 467 B.R. 734, 739 (Bankr. S.D.N.Y. 2012) ("After *Stern v. Marshall*, [related] the ability of bankruptcy judges to enter interlocutory orders in proceedings . . . has been reaffirmed . . . ."); *Boyd v. King Par, LLC*, Case No. 11-CV-1106, 2011 WL 5509873, at *5 (W.D. Mich. Nov. 10, 2011) ("[U]ncertainty regarding the bankruptcy court's ability to enter a final judgment . . . does not deprive the bankruptcy court of the power to entertain all pretrial proceedings, including summary judgment motions.").

(finding that trustee's action for declaratory judgment on coverage under insurance policy issued pre-petition was only "related to" the bankruptcy case); In re PRS Ins. Grp., Inc., 445 B.R. 402, 405 (Bankr. D. Del. 2011) (holding that declaratory judgment action involving breach of two reinsurance agreements arose under state law and was "related to" case); G-I Holdings, Inc. v. Hartford Accident & Idem. Co. (In re G-I Holdings, Inc.), 278 B.R. 376, 380 (Bankr. D. N.J. 2002) (same).

A declaratory judgment action to determine insurance coverage on a pre-petition state law contract does not involve the bankruptcy petition itself or any steps or sub-action within the bankruptcy case and therefore is not a case under title 11, a proceeding arising under title 11, or a proceeding arising in a case under title 11.  The breach of contract and breach of fiduciary duty claims are ordinary state law causes of action of the type that are brought in state courts across the country with no connection to the Bankruptcy Code or a bankruptcy case. Therefore, the Court concludes that it has, at most, "related to" jurisdiction over those counts.

"After confirmation of a chapter 11 plan, however, the scope of the bankruptcy court's 'related to' jurisdiction diminishes." Astropower Liquidating Trust v. Xantrex Tech, Inc. (In re AstroPower Liquidating Trust), 335 B.R. 309, 323 (Bankr. D. Del. 2005).  Post-confirmation, a bankruptcy court only has

6

jurisdiction over a claim that has "a close nexus to the bankruptcy plan or proceeding" such as one which "affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement." Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.), 372 F.3d 154, 168-69 (3d Cir. 2004). See also EXDS, Inc. v. Richard Ellis, Inc. (In re EXDS, Inc.), 352 B.R. 731, 735 (Bankr. D. Del. 2006); AstroPower, 335 B.R. at 323.

In this case, the Trust argues that Counts I and II bear a "close nexus" to the bankruptcy case because (1) the creditors will receive more money sooner from the $55 million held in reserve, (2) the Confirmation Order addresses an important issue in dispute in the adversary proceeding, and (3) the retention of jurisdiction provisions in the Plan include the adversary proceeding.

### 1. $55 Million Escrow

The Trust contends that creditors will receive more money sooner if the Defendants are required to pay the D&Os' defense costs and the $55 million in reserve is released. The Trust concedes that under Resorts the "mere possibility of a gain or loss of trust assets" is not sufficient to confer post-confirmation bankruptcy jurisdiction over related matters. Nonetheless, the Trust argues that the impact on claims and the existence of the plan reserve are additional contributing factors

that meet the "close nexus" standard.

The Defendants reply that the mere possibility of additional recovery to augment the assets of the Trust is insufficient standing alone to establish the required "close nexus." See, e.g., Resorts, 372 F.3d at 170 ("[T]he potential to increase the assets of the Litigation Trust and its beneficiaries does not necessarily create a close nexus sufficient to confer 'related to' bankruptcy court jurisdiction post-confirmation."); PRS Ins. Grp., 445 B.R. at 405 ("The mere potential to increase the assets of a post-confirmation trust is insufficient to establish the required 'close nexus.'"); BWI Liquidating Corp., 437 B.R. at 166 (finding that "the potential to increase recovery for creditors" is "insufficient to establish a close nexus").

In the case at bar, the Plan called for approximately $7 billion to be distributed to creditors and shareholders. Most notably, the Plan provided payment in full (with interest) to most unsecured creditors. Thus, even in the worse-case scenario where the Trust is forced to pay the D&Os' defense costs without insurance coverage, creditors under the Plan will largely be unaffected. Further, the release of the reserve (even if paid to creditors or shareholders) will provide only a de minimus additional recovery over the almost $7 billion to be distributed under the Plan. Therefore, the Court concludes that the assets of the Trust will not be augmented (or diminished) significantly

by any decision on the extent of coverage of the 2008-09 Policies. As the Third Circuit stated in Resorts, "if the mere possibility of a gain or loss of trust assets sufficed to confer bankruptcy court jurisdiction, any lawsuit involving a continuing trust would fall under the 'related to' grant. Such a result would widen the scope of bankruptcy court jurisdiction beyond what Congress intended . . . ." 372 F.3d at 170.

      2.   Confirmation Order

The Trust argues, however, that the potential to increase recovery of trust assets is augmented by other contributing factors, namely that the suit is related to the Plan and Confirmation Order. AstroPower, 335 B.R. at 324. See also Lefkowitz v. Mich. Trucking, LLP (In re Gainey Corp.), 447 B.R. 807, 814 (Bankr. W.D. Mich. 2011) ("[P]ostconfirmation subject matter jurisdiction will always exist when a bankruptcy court is called upon to interpret its prior orders."). In the denial of coverage letter, the Defendants state that they may deny coverage based on an "Insured v. Insured exclusion" in the 2008-09 Policies. The Trust notes that the Confirmation Order provided that "the Creditors' Committee was authorized to prosecute claims or causes of action . . . [including the] D&O claims . . . ." (D.I. 9759.) Therefore, the Trust asserts that the Bankruptcy Court must interpret its own Order to conclude that the "Insured v. Insured exclusion" is not applicable.

While the Trust may have a valid claim based on the interpretation of the Plan and Confirmation Order, the Court concludes that that assertion is not the type of plan interpretation sufficient to confer jurisdiction, because the interpretation is not essential to the integrity of the Plan and its implementation.  See Resorts, 372 F.3d at 170 (holding that the plan and trust agreement which provided the bare factual context of the state law claims was insufficient to confer jurisdiction and did not require the court to interpret the plan).

Further, the Plan and Confirmation Order can be interpreted by other courts of competent jurisdiction.  "[S]tate courts are qualified to interpret the language of bankruptcy plans and orders and routinely engage in such interpretation."  In re Kmart Corp., 307 B.R. 586, 596 (Bankr. E.D. Mich. 2004).  See also, Icco v. Sunbrite Cleaners, Inc. (In re Sunbrite Cleaners, Inc.), 284 B.R. 336, 342 (N.D.N.Y. 2002) ("Because contract interpretation is an issue of state law . . . the state courts are perfectly well-suited to interpret the First Amended Plan."); In re Landreth Lumber Co., 393 B.R. 200, 205 (Bankr. S.D. Ill. 2008) ("[T]he state court had concurrent jurisdiction to interpret a provision of the confirmed plan as a matter of contract law . . . .").

### 3. Reservation of Jurisdiction in Plan

The Trust also contends that the Court has jurisdiction because the Plan expressly provides that the Bankruptcy Court would retain jurisdiction "to determine any and all motions, adversary proceedings, applications, and contested or litigated matters that may be pending on the Effective Date . . . ."  (D.I. 9178.)  The Trust argues that this Plan provision is "more than adequate" to confer jurisdiction over the breach of contract and breach of fiduciary duty claims.

The Defendants respond that "a Plan must specifically describe a cause of action in order to retain related to jurisdiction" over it.  (Adv. D.I. 54.)  Because the Plan in this case did not specifically identify this adversary proceeding, the Defendants argue that the provision cited by the Trust is insufficient to confer post-confirmation jurisdiction.  BWI Liquidating Corp., 437 B.R. at 166.

The Court agrees with the Defendants that the Debtors cannot be permitted to "write [their] own jurisdictional ticket" by merely including a generic retention clause in the Plan. Resorts, 372 F.3d at 161.  If including a retention of jurisdiction clause in a Plan was sufficient, the limitation on post-confirmation jurisdiction would be easily eliminated. Rather, to have a sufficiently close nexus to retain post-confirmation jurisdiction, the plan must "specifically describe[]

an action over which the Court had 'related to' jurisdiction pre-confirmation and expressly provide[] for the retention of such jurisdiction to liquidate that claim for the benefit of the estate's creditors. . . ."  See AstroPower, 335 B.R. at 325.  Such specific language helps ensure that "bankruptcy court jurisdiction would not raise the specter of unending jurisdiction" post-confirmation.  Id.  See also Resorts, 372 F.3d at 176.

The Trust argues that a specific reference to the claim in the Plan is not necessary for there to be post-confirmation jurisdiction.  See, e.g., U.S. Trustee v. Gryphon at Stone Mansion, Inc., 216 B.R. 764, 769 (W.D. Pa. 1997) (holding that "the absence of a provision retaining jurisdiction in a confirmed plan does not deprive the court of jurisdiction.").  The Trust contends that where a close nexus exists on independent grounds, it is appropriate to give effect to the Plan's jurisdictional grant.

The Court agrees that even when a plan clearly and unambiguously reserves jurisdiction for a specific cause of action, the Court will not have post-confirmation jurisdiction unless a substantial nexus is established.  See, e.g., Resorts, 372 F.3d at 169 (holding that "jurisdictional retention plans cannot confer jurisdiction greater than that granted under 28 U.S.C. § 1334 or 28 U.S.C. § 157"); BWI Liquidating Corp., 437

B.R. at 166 ("Plan provisions that purport to preserve the bankruptcy court's jurisdiction are not alone sufficient to establish post-confirmation jurisdiction; instead the court must determine whether a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan.") (internal citations omitted); Fairchild Liquidating Trust v. New York (In re The Fairchild Corp.), 452 B.R. 525, 532 (Bankr. D. Del. 2011) (holding that general retention of jurisdiction provision was not sufficient to retain jurisdiction over a claim by the liquidating trust).

The Court, however, has found no close nexus here. Therefore, because there is no close nexus to the Plan (and no specific reference in the Plan), the Court concludes that it has no subject matter jurisdiction over the breach of contract and breach of fiduciary duty claims and the motion to dismiss them will be granted.[5]

    B.   Declaratory Relief

Counts III and IV of the Complaint seek a declaratory judgment that the Defendants are not subrogated to the D&Os' indemnity claim or that, in the event they are subrogated, those claims must be equitably subordinated.

---

[5] Accordingly, the Defendants' remaining arguments for dismissal of the breach of contract and breach of fiduciary duty claims – that there is no "case or controversy" between WMI and the Defendants and that the Complaint failed to state a claim upon which relief can be granted – need not be addressed.

Pursuant to the Declaratory Judgment Act of 1934, the Court is authorized to "declare the rights and other legal relations of any interested party seeking such declaration" when there is a "case of actual controversy." 28 U.S.C. § 2201(a). Courts have interpreted the remedy to be "limited to cases and controversies in the constitutional sense." Wyatt, V.I., Inc. v. Gov't of the Virgin Islands, 385 F.3d 801, 805 (3d Cir. 2004). For there to be a "case of actual controversy" in the constitutional sense, the controversy must be "definite and concrete, touching the legal relations of parties having adverse legal interests." Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240-41 (1937). The controversy must also be "real and substantial" as opposed to "advising what the law would be upon a hypothetical state of facts." Id. In order to provide declaratory relief, the controversy must be ripe for judicial intervention. "It cannot be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." Wyatt, 385 F.3d at 806 (citing Public Serv. Comm'n v. Wycoff Co., Inc., 344 U.S. 237 (1952)).

In the case at bar, the Defendants cannot currently assert a claim for subrogation because it exists only to the extent of actual payment under those policies, and the Defendants have

refused to pay. (D.I.A. 5 at Ex. A.) See, e.g., In re Darosa, 318 B.R. 871, 878-79 (B.A.P. 9th Cir. 2004) (holding that only when the actual payment of all or part of the claim is made does the right to subrogation become available); Handex of Md., Inc. v. Waste Mgmt. Disposal Serv., 458 F. Supp. 2d 266, 275 (D. Md. 2006) (holding that the right to subrogation arises only after actual payment). Accordingly, the Trust's request for a declaratory judgment for disallowance of the subrogation claim is premature because it requires the assumption of future, hypothetical events that have yet to occur. Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 561 (3d Cir. 2002) ("In cases where a plaintiff seeks . . . declaratory relief . . . standing will not lie if adjudication . . . rests upon contingent future events that may not occur as anticipated or indeed may not occur at all.").

Further, the Defendants have not even filed proofs of claim in this case, nor have those claims been allowed. Section 510(c) of the Bankruptcy Code permits equitable subordination of "all or part of an allowed claim . . . or all or part of an allowed interest." 11 U.S.C. § 510(c). "The great weight of authority is that Section 510(c) does not permit subordination absent an allowed claim." In re Dreier LLP, 452 B.R. 391, 451 (Bankr. S.D.N.Y. 2011).

Thus, the Court concludes that the Trust's subrogation and equitable subordination claims are far too hypothetical and speculative to constitute an actual controversy at this stage. Accordingly, Counts III and IV do not allege a "case of actual controversy" and must be dismissed for lack of jurisdiction.

IV. CONCLUSION

For the reasons set forth above, the Court will grant the Defendants' Motion to Dismiss the instant adversary proceeding.

An appropriate order is attached.

Dated: October 4, 2012                BY THE COURT:

                                      Mary F. Walrath
                                      United States Bankruptcy Judge